THE BUFFALO, BELLEVUE AND LANCASTER RAILWAY COMPANY, Respondent, v. THE NEW YORK, LAKE ERIE AND WESTERN RAILROAD COMPANY and THE BUFFALO, NEW YORK AND ERIE RAILROAD COMPANY, Appellants.

*Crossing of a steam railroad by a street surface railroad — constitutionality of chapter 239 of the Laws of 1893.*

The provision of chapter 239 of the Laws of 1893, which permits a street surface railroad corporation to lay its tracks across and intersect with any railroad operated by locomotive, steam or other power, upon the surface of any street in any city, town or village having less than 500,000 inhabitants, after application for the appointment of commissioners to determine the mode of intersection and the compensation to be made therefor, upon giving a bond conditioned for the performance of the terms which may be imposed by the commissioners and affirmed by the court, is not in contravention of that provision of the Constitution of the State of New York which prohibits the taking of private property for public use without just compensation.

The right to compensation rests upon the statute and not upon the constitutional provision.

APPEAL by the defendants, the New York, Lake Erie and Western Railroad Company and the Buffalo, New York and Erie Railroad Company, from an order of the Supreme Court, made at the Erie Special Term and entered in the office of the clerk of Erie county on the 8th day of May, 1893, denying the defendants' motion to set aside an order made at the Erie Special Term on the 6th day of April, 1893.

*E. C. Sprague*, for the appellants.

*Porter Norton* and *Adelbert Moot*, for the respondent.

HAIGHT, J.:

On the 6th of April, 1893, a petition was presented to the Erie Special Term on behalf of the respondent, setting forth that it is a street surface railroad corporation duly organized under and by virtue of chapter 565 of the Laws of 1890 and amendments thereto ; that it had proceeded to lay out, designate and adopt a route for its railroad between the termini specified in its articles of incorporation, and had obtained the consent of the local authorities and property owners therefor required by statute, and had proceeded to construct

588 BUFFALO, ETC., R. R. CO. *v.* N. Y., L. E. & W. R. R. CO.

Fifth Department, October Term, 1893.          [Vol. 72.

its railroad; that a portion of the route was along and in the Union road, a highway in the town of Cheektowaga, and that such route intersects and crosses the tracks and roadbed of the appellants upon the surface; that the town of Cheektowaga has less than 500,000 inhabitants, and that the respondent has been unable to agree with the appellants as to the line or lines, grade or grades, points or manner of such intersection or crossing, and upon the compensation to be made therefor; that an application had been made to the court to appoint commissioners to determine the same, and that the court had by an order duly appointed such commissioners. The petition concluded with a prayer for an order permitting the respondent to lay its tracks across and to intersect, on the surface of the Union road, the tracks and roadbed of the appellants pursuant to the provisions of chapter 239 of the Laws of 1893. Accompanying such petition was a bond executed by the respondent, with sureties, conditioned that if the respondent company shall fully and faithfully perform and carry out any and all conditions and requirements which may or shall be imposed by the commissioners and be confirmed by the court in determining the line or lines, grade or grades, points or manner of the crossing and intersection of the tracks and roadbed of the appellant companies by the respondent company, and also in determining the amount of compensation to be paid therefor, and shall further conform the crossing and intersection of the tracks and roadbed of the appellant companies by the respondent company to the requirements made by the commissioners and confirmed by the court, then this obligation shall be void and of no effect, otherwise to remain in force and effect. Thereupon, on the motion of the attorneys for the respondent, the bond was approved, and the order prayed for granted. Thereafter, and on May 3, 1893, the appellants, upon notice, moved for an order vacating the former order, which motion was denied. From the order denying such motion this appeal was taken.

Chapter 239 of the Laws of 1893 is entitled "An act in relation to the intersection and crossings of the tracks and roadbeds of certain railroads laid in, across or upon the highways, streets, avenues or roads of the cities, towns and villages of the State." The 1st section of the act is as follows: "Whenever the railroad or route of any street surface railroad corporation shall intersect and cross, or shall

cross the tracks and roadbed of any railroad operated by locomotive, steam or other power which are laid in, across or upon the surface of any street, avenue, road or highway in any city, town or village of the State having less than five hundred thousand inhabitants, and such street surface railroad corporation having been unable to agree with the corporation owning the tracks and roadbed so intersected or to be intersected and crossed, as to the line or lines, grade or grades, points or manner of such intersection and crossing, or upon the compensation to be made therefor, shall have applied to the court by petition to appoint commissioners to determine the same, the court shall, upon application made by such street surface railroad corporation, at or after the time of the appointment of such commissioners, or if an answer to the petition of such street surface railroad corporation has been interposed at any time thereafter, direct that such street surface railroad corporation be permitted to lay its tracks across and to intersect upon the surface of the street, avenue, road or highway, the tracks and roadbed of such railroad operated by locomotive, steam or other power ; provided such street surface railroad corporation shall, at the time of obtaining such order, make and file with the clerk of said court its bond or undertaking in writing in an amount and with surety or sureties to be approved by the court, conditioned for the full and faithful performance by such street surface railroad corporation of any and all conditions and requirements which may be imposed by said commissioners, and be affirmed by the court in determining the line or lines, grade or grades, points or manner of such intersection and crossing, and as to the amount of compensation to be paid therefor, and also conditioned to conform such crossing and intersection made by virtue of such order of the court to the requirements made by said commissioners as affirmed by the court."

It is claimed that this act is in contravention of the Constitution of the State, which provides that "Private property shall not be taken for public use without just compensation."

Upon reference to the act it will be observed that the proceedings authorized by it are connected with and dependent upon the proceedings authorized by the General Railroad Act in reference to the determination of the line or lines, grade or grades, point or manner of intersections and crossings of other railroads, and of the

590 BUFFALO, ETC., R. R. CO. *v.* N. Y., L. E. & W. R. R. CO.

Fifth Department, October Term, 1893.          [Vol. 72.

amount of compensation to be paid therefor. Proceedings under the act can only be resorted to where the parties have been unable to agree, and where proceedings have been taken to procure the appointment of commissioners, and not then until after the commissioners have been appointed or an answer has been interposed. The crossing can be allowed only upon the giving of a bond approved by the court, conditioned for the full and faithful performance of all of the requirements of the commissioners, etc. It is apparent that the occupation provided for is temporary, and only continues pending the determination of the commissioners and the confirmation of their report by the court. The proceedings instituted are not for the purpose of condemning or divesting the appellants of any title to the lands occupied by their roadbed, or of their rights to use the same, nor is it to acquire any exclusive use of the lands for the respondent. It is merely to fix the line or lines, grade or grades, points or manner of crossing, and to determine the compensation which shall be paid therefor. (*Matter of Lockport & Buffalo R. R. Co.*, 77 N. Y. 557.)

The Railroad Law (Chap. 565 of the Laws of 1890, § 4, subd. 2; General Laws, Chap. 39 of 1892) provides that railroad corporations may "take and hold such voluntary grants of real estate and other property as shall be made to it to aid in the construction, maintenance and accommodation of its railroad, and to acquire by condemnation such real estate and property as may be necessary for such construction, maintenance and accommodation in the manner provided by law, but the real property acquired by condemnation shall be held and used only for the purposes of the corporation during the continuance of the corporate existence." The statute further provides that it may "cross, intersect, join or unite its railroad with any other railroad before constructed at any point on its route and upon the ground of such other railroad corporation, with the necessary turnouts, sidings, switches and other conveniences in furtherance of the objects of its connection." And further, "every railroad corporation whose road is or shall be intersected by any new railroad shall unite with the corporation owning such new railroad in forming the necessary intersections and connections, and grant the requisite facilities therefor. If the two corporations cannot agree upon the amount of compensation to be made therefor, or

upon the line or lines, grade or grades, points or manner of such intersections and connections, the same shall be ascertained and determined by commissioners, one of whom must be a practical civil engineer and surveyor, to be appointed by the court as is provided in the Condemnation Law. Such commissioners may determine whether the crossing or crossings of any railroad before constructed shall be beneath, at or above the existing grade of such railroad, and upon the route designated upon the map of the corporation seeking the crossing or otherwise." (§ 12.)

It will thus be observed that one railroad has the right to cross another railroad, and that such right is given by the statute ; that every railroad company in acquiring land for its right of way acquires the same subject to this right. A railroad traversing the State might completely cut off and prevent intercourse of one part of the State with the other, were it not for the reservation of the right of crossing. This reservation extends to highways of every nature and character. In this regard, railroad corporations acquire a qualified title in their real property different from that of an individual.

Commissioners of highways may lay out public roads across the railroad tracks, and require the railroad company to construct the same, and this without compensation. (Laws 1853, chap. 62.)

In the case of *The Albany Northern Railroad Company* v. *Brownell* (24 N. Y. 345–349), DENIO, J., in considering the question of the constitutionality of the act permitting highways to be laid across railroad tracks without compensation, says : " But the statute declares that the highway may be laid across the track without compensation to the corporation owning the railroad. This, it is argued, is repugnant to the Constitution, as the taking of private property for the use of the public, without recompensing the owner. Upon this, my opinion is, that the railroad companies, under the general act, do not acquire the same unqualified title and right of disposition of real estate taken for the road, and paid for, according to the act, which individuals have in their lands. The statute declares the effect of the proceedings, which it authorizes, to be that the company ' shall be entitled to enter upon, take possession of, and use the said land for the purposes of its incorporation during the continuance of its corporate existence ; ' and it further declares that

592 BUFFALO, ETC., R. R. CO. *v.* N. Y., L. E. & W. R. R. CO.

Fifth Department, October Term, 1893.        [Vol. 72.

the land which it thus appropriates shall be deemed to be acquired for public use.  The title to the land being thus limited to its use for the purposes of the railroad enterprise, it is necessarily subject to the exercise of all those powers reserved to the Legislature to which the franchises of the corporation are subject.  If the latter can be restricted or modified by subsequent legislation, the uses to which the land which the corporation has acquired may be changed by the same authority.  It has long been the policy of the Legislature to qualify corporate franchises in such a manner as to render them subject to the control of the law-making power.  For this purpose, the Revised Statutes provided that the charter of every corporation which should thereafter be granted by the Legislature should be subject to alteration, suspension or repeal, at its discretion. (1 R. S. p. 600, § 8.) * * * The property of the railroad is not taken away from the proprietors, who are still allowed to use it for all the purposes for which it was acquired from the original owner.  Nor is there anything unlawful in obliging the railroad company to make the necessary excavations or embankments for taking the highway across the railroad.  The disturbance of the surface of the ground, which has rendered such work necessary, was effected by the railroad itself; and the reservation of legislative authority we may suppose to have been inserted for the purpose of obliging the companies to conform to such directions as subsequent Legislatures should discover to be necessary for the public good, or which should be required by public policy."

In the case of *The Boston & Albany R. R. Co.* v. *The Village of Greenbush* (52 N. Y. 510), Church, Ch. J., says : " The validity of the act of 1853, authorizing the laying out of streets and highways across the track of railroads, without compensation to the owners of such railroads, was affirmed in *The Albany Northern Railroad Company* v. *Brownell* (24 N. Y. 345), upon grounds entirely satisfactory to this court, and we concur in the construction of the act given in that case."

To the same effect is the case of *The President, Managers & Directors of the Delaware & Hudson Canal Company* v. *The Village of Whitehall* (90 N. Y. 21).

It will be observed that these cases proceed upon the theory that the Legislature, in granting a charter to a railroad corporation, has

reserved to itself the power to qualify the corporate franchises and determine how its power shall be exercised, and that under this power it may permit the construction of highways on railroad lands so as to allow the public to cross the same without awarding compensation for property taken.   In such a case, the constitutional provision referred to has no application, for the reason that it is not the taking of private property, but is the exercise of a right reserved by the statute, and the title of the railroad is deemed subject and subordinate to such right.

We are unable to see why this principle does not dispose of the question under consideration.   True, a railroad is different from a highway laid out by commissioners of highways of towns, but, as we have seen, the statute gives one railroad corporation the right to cross another.   The railroad to be crossed is deemed to own its lands subject to the conditions imposed by the statute.   One of the conditions is that it shall permit any other railroad to intersect or cross.   True, compensation is to be awarded.   Such is the provision of the statute.   But the compensation is awarded under the statute, and not by reason of the Constitution.   The Legislature, in granting a charter to a railroad corporation, had the right to impose the condition that it should allow other railroads to cross without compensation, and had it so provided, it could not be successfully contended that the provision would have been in contravention of the Constitution.   The Legislature has seen fit to provide for the manner in which the crossing shall be made, and allows compensation therefor.   This is independent of the Constitution.   It has now provided that the compensation may be secured by a bond approved by the court, and that, upon giving such a bond, the crossing may be had pending the determination of the commissioners.   It is not an unreasonable enactment.   The proceedings may be prolonged through a number of years, and in the meantime the public deprived of the facilities which the crossing would afford, and under the powers reserved by the Legislature, the enactment does not appear to us to be in violation of the provisions of the Constitution.

These views render it unnecessary to consider the question as to whether a bond furnishes a definite and adequate source of payment for the property taken under the rule referred to in the cases of *In*

*the Matter of the Mayor of the City of New York* (99 N. Y. 577); *Sage* v. *City of Brooklyn* (89 id. 196), and *Bloodgood* v. *M. & H. R. R. Co.* (18 Wend. 18).

The order appealed from should, therefore, be affirmed, with ten dollars costs and disbursements.

DWIGHT, P. J., and LEWIS, J., concurred.

Order appealed from affirmed, with ten dollars costs and disbursements.